IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEUTSCHE BANK TRUST COMPANY | § | |
| AMERICAS, AS TRUSTEE FOR | § | |
| RESIDENTIAL ASSET MORTGAGE | § | |
| PRODUCTS, INC., MORTGAGE- | § | |
| BACKED PASS-THROUGH | § | |
| CERTIFICATES, SERIES 2005-SL1, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:16-CV-3210-G-BH |
| | § | |
| CHARLES MICHAEL COMSTOCK, | § | |
| JAMES LAWRENCE COMSTOCK, THE | § | |
| UNKNOWN HEIRS AT LAW OF | § | |
| CHARLES THEODORE COMSTOCK, | § | |
| DECEASED, AND THE UNKNOWN | § | |
| HEIRS AT LAW OF SALLYANN | § | |
| COMSTOCK, DECEASED, | § | |
| Defendants. | § | Referred to U.S. Magistrate Judge |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By *Special Order No. 3-251*, this foreclosure case has been automatically referred for full

case management, including the determination of non-dispositive motions and issuance of findings

of fact and recommendations on dispositive motions. Before the Court for recommendation is

*Plaintiff's Combined Motion for Default and Final Summary Judgment* filed September 19, 2017

(doc. 53), and defendant Charles Michael Comstock's *"Writ of Quo Warranto"* filed May 23, 2018

(doc. 84). Based on the relevant filings, evidence, and applicable law, the plaintiff's combined

motion should be **GRANTED**, and the defendant's "writ" should be **DENIED**.

## I.  BACKGROUND

This case involves the attempted foreclosure of real property located at 5325 South Peachtree

Road, Balch Springs, Texas 75180 (the Property). (doc. 1 at 4.)[1] On July 3, 2001, Charles Theodore Comstock executed a Texas Home Equity Note (Note) in favor of Homecomings Financial Network, Inc. (Homecomings) for a home equity loan in the original principal amount of $76,000.00. (doc. 53-3 at 8-14.) He and his wife, Sallyann Comstock (collectively Borrowers), contemporaneously executed a Texas Home Equity Security Instrument (Deed of Trust) and a Texas Home Equity Affidavit and Agreement (Affidavit) that granted a security interest in the Property to Homecomings to secure repayment under the Note. (*Id*. at 16-33.) Under the terms of the Note and Deed of Trust, Borrowers would be in default if they failed to timely pay the full amount of each required monthly payment and subject to acceleration of the loan and foreclosure proceedings. (*Id*. at 8-14, 16-33.)

On August 13, 2001, the Note and Deed of Trust were assigned to Bankers Trust Company (Bankers Trust) in an Assignment of Deed of Trust filed in the public records of Dallas County, Texas. (*Id*. at 36-37.) Bankers Trust subsequently assigned the Note to Residential Funding Corporation (Residential Funding), as reflected in an allonge to the Note. (*Id*. at 12.) Residential Funding assigned the Note again to Deutsche Bank Trust Company Americas, as Trustee for Residential Asset Mortgage Products, Inc., Mortgage-Backed Pass-Through Certificates, Series 2005-SL1 (Plaintiff), as reflected in a second allonge to the Note. (*Id*. at 14.) On November 30, 2015, a Corporate Assignment of Deed of Trust, recorded in the public records of Dallas County, Texas, was executed that assigned Plaintiff as the beneficiary to the Deed of Trust. (*Id*. at 34-35.) Plaintiff is the current owner of the Note and the beneficiary of the Deed of Trust. The approved loan servicer is Ocwen Servicing, LLC (Ocwen). (*Id*. at 34.)

Beginning April 1, 2015, Borrowers failed to submit their monthly payments as required

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

under the Note and Deed of Trust, and they were provided with a Notice of Default and Intent to Accelerate by Ocwen's attorneys on November 9, 2015. (*Id.* at 4-5, 41-51.) This Notice explained that Borrowers were in default for failure to make required payments, and that the maturity date of the loan would be accelerated if the default was not timely cured. (*Id.* at 41.) On December 15, 2015, Ocwen's attorneys sent Borrowers a Notice of Acceleration of Loan Maturity explaining that the maturity date of the Note had been accelerated because of their failure to cure the default. (*Id.* at 54-64.) Through August 18, 2017, the total amount due on the loan was $82,387.54, with interest and other charges continuing to accrue while in default. (*Id.* at 66-70.) Plaintiff was later notified that both of the Borrowers had died intestate with no probate proceedings, executor, or administrator in either estate.[2] (doc. 1 at 2-3.)

On November 16, 2016, Plaintiff filed this suit seeking to enforce its statutory probate lien on the Property through foreclosure against the heirs of the Borrowers, who were identified as Charles Michael Comstock (Charles), James Lawrence Comstock (James), and the Borrowers' unknown heirs (Unknown Heirs). (*Id.*) It properly served both Charles and James on December 29, 2016, and it completed service by publication on the Unknown Heirs on March 21, 2017. (docs. 9, 10, 23.) On April 13, 2017, an attorney ad litem was appointed to locate and represent the Unknown Heirs.[3] (doc. 26.) The attorney ad litem filed his final report on May 22, 2017, in which he identified

---

[2] Under Texas Estates Code §§ 101.001(b) and 101.051, the heirs at law of the Borrowers acquired all of Borrowers' respective estates, including all of their interests in the Property immediately upon their death, subject to the debt owed to Plaintiff.

[3] It was additionally ordered that the attorney ad litem "be paid a reasonable fee and that such fee be taxed as costs of court." (doc. 26 at 2.) After filing his report and locating Nicole, the attorney ad litem submitted an Attorney Ad Litem's Fee Declaration seeking $2,913.16, which included a reduction of $1,630.50, for "fees and expenses for work on this matter." (doc. 33 at 3-4.) None of the parties have objected to this amount as unreasonable. Having reviewed the credentials of the attorney ad litem and the invoices attached to the fee declaration, the requested fees are reasonable and should be taxed as costs of court.

Nicole L. Comstock a/k/a Nicole Wolfe (Nicole) as an additional heir. (doc. 33.) After being granted leave, Plaintiff filed an amended complaint adding Nicole as a defendant to this suit, and it subsequently served her on July 13, 2017. (docs. 35, 38, 39, 47.) Charles, acting *pro se*, is the only party who answered this suit or contested Plaintiff's claim to the Property. (doc. 7.)[4] Neither James nor Nicole filed any responsive pleadings in this action, and a Clerk's Entry of Default was entered for both of them on July 21, 2017. (doc. 50.)

Plaintiff seeks a declaration that it has a statutory probate lien on the Property, an order allowing it to enforce its lien through foreclosure, and an action in trespass to try title[5] declaring that all of the Borrowers' heirs at law are divested of their right, title, and interest in the Property after foreclosure.[6] (docs. 1 at 5-6, 39 at 5-7.) It also seeks attorneys' fees as allowed under the Note, Deed of Trust, and Chapter 38 of the Texas Civil Practices and Remedies Code. (docs. 1 at 7-8, 39 at 8.)

On September 19, 2017, Plaintiff filed a combined motion for default judgment against James and Nicole, and for summary judgment against Charles and the Unknown Heirs. (doc. 53.) On October 2, 2017, Charles filed a "Declaration of rights," which is liberally construed as his response to the summary judgment motion, and Plaintiff filed a reply on October 17, 2017. (docs. 57, 61.) While Plaintiff's motion was pending, Charles filed a "Writ of Quo Warranto," in which he appears to challenge the Court's jurisdiction over him and this action. (doc. 84.)

---

[4] Charles filed a "Claim for Summary Judgment," which was denied on February 14, 2018. (docs. 31, 65, 70.)

[5] "An action in trespass to try title is the method of determining title to lands, tenements, or other real property." Tex. Prop. Code § 22.001. This action "is in its nature a suit to recover the possession of land unlawfully withheld from the owner and to which he has the right of immediate possession." *Rocha v. Campos*, 574 S.W.2d 233, 235 (Tex. App.–Corpus Christi 1978, no writ.) (citations omitted).

[6] Plaintiff previously filed a foreclosure action in state district court, but that suit was dismissed without prejudice and with no final judgment on the merits. *See Deutsche Bank Trust Co. v. Comstock, et al.*, DC-16-3710 (191st Dist. Ct., Dallas County, Tex. Mar. 30, 2016).

4

## II. WRIT OF QUO WARRANTO[7]

In his "Writ of Quo Warranto," Charles explains that the "purpose of this writ is to review for the Roman Curia the authority claimed by this Court justifying it's [*sic*] action taken against the living man [Charles] . . . [a]nd family." (doc. 84 at 1.) It appears to question the Court's jurisdiction, but the only relief specifically sought is that he be provided with "photocopies of the American Bar Association Cards issued to all members of the Court associated with this case and also the Foreign Agent Documents required to be on file."[8] (*Id.*)

**A.    <u>Quo Warranto</u>**

A writ or action for quo warranto is brought by the state to protect itself and the good of the general public. *Superior Oil Co. v. City of Port Arthur*, 726 F.2d 203, 205 n.1 (5th Cir. 1984); *see also Lyon v. Dir., TDCJ-CID*, No. 5:09-CV-188, 2010 WL 598735, at *2 (E.D. Tex. Feb. 17, 2010) (a quo warranto proceeding is "traditionally brought by the sovereign, or a representative of the sovereign" ) (citing *Country Club Estates, L.L.C. v. Town of Loma Linda*, 213 F.3d 1001, 1003 (8th Cir. 2000)).  It is an "ancient prerogative writ in the nature of a writ of right for the king against one who claims an office, franchise or liberty, quo warranto suits inquire by what authority the claimant supports his claim." *Id.* (citing *State ex rel. City of Colleyville v. City of Hurst*, 519 S.W.2d 698 (Tex. Civ. App.–Fort Worth 1975, writ ref'd n.r.e.). Because Charles brings this writ for quo warranto as an individual, it should be denied. *See McKinley v. Bureau of Prisons*, No. 6:07-CV-

---

[7] Although this writ was filed after Plaintiff's combined motion for default and summary judgment, it appears to be a challenge to jurisdiction, which must be determined before the merits of the suit are considered. *See United States Solomon v. Lockheed Martin Corp.*, No. 3:12-CV-4495-D, 2015 WL 6956578, at *1 (N.D. Tex. Nov. 10, 2015) ("Although defendants also assert merits-based grounds for dismissal, the court can only reach these grounds if it has subject matter jurisdiction.").

[8] Charles does not identify exactly what "Foreign Agent Documents" should be produced or how they pertain to the current foreclosure action. (*See* doc. 84.)

5

226, 2007 WL 2480323, at *5 (E.D. Tex. Aug. 30, 2007); *see also Lyon*, 2010 WL 598735, at *2.

**B.**    **Subject Matter Jurisdiction**

This writ can also be liberally construed as a challenge to subject matter jurisdiction. Charles has previously challenged subject matter jurisdiction in his "Claim for Summary Judgment," which was denied on February 14, 2018. (docs. 65, 70.)   The Court has already determined that this foreclosure action is properly brought under diversity jurisdiction because there is complete diversity between the parties and the amount in controversy exceeds $75,000.00. (docs. 65 at 5-7, 70.) The only new argument asserted in the writ is that the Property and "estate" have been "re-venued" twice. (doc. 84 at 2-6.) The first "re-venue" was "by a corporate franchise of 'the United States of America, Incorporated' doing business under conditions of semantic deceit . . . by the International Monetary Fund (IMF) . . . which removed his estate to Puerto Rico" (*id*. at 2), and the second "re-venue" was by Charles himself who "re-venued his redeemed estate to the jurisdiction of the air under the direct protection of the Office of the Pope [, but] he has maintained his material interests on the land of the United States of America" where it is only "subject to Roman Civil Law" (*id*. at 3). Charles does not challenge the existence of diversity jurisdiction, and there is no evidence of any "re-venuing" of the Property or this action. To the extent that this writ may be construed as a challenge to subject matter jurisdiction, it should be denied.

**C.**    **Personal Jurisdiction**

This writ can also be liberally construed as a challenge to the Court's personal jurisdiction over Charles. The writ argues that Charles never "knowingly and willingly agreed to give up his status as a State Citizen [of Texas] in favor of the slave status of the 'U.S. citizen'" (*id*. at 4), and that he is "immune from prosecution" for the crimes of "making false claims of diplomatic

immunity" and for "issuing false documents to other members of the Divine Province" that this Court has allegedly charged against him (*id*. at 6-7). Charles concedes, however, that he has been a resident of Texas for "over 30 years," and he does not contest that he was properly served with summons or that he filed several responsive pleadings and motions in this action before contesting personal jurisdiction. *See PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 460 (5th Cir. 2001) (noting the "well-established rule that parties who choose to litigate actively on the merits thereby surrender any jurisdictional objections" to a court's exercise of personal jurisdiction). He further fails to identify anything filed in this civil action charging him with a criminal violation. Because he is an uncontroverted resident of the forum state and has already litigated extensively on the merits of this suit, Charles has submitted to personal jurisdiction in this action. *Id.* (explaining that a party submits to a court's jurisdiction when he has "litigated extensively on the merits before making any jurisdictional objections"). To the extent that the writ may be construed as a challenge to personal jurisdiction, it should be denied.

### III. DEFAULT JUDGMENT

Plaintiff first seeks a default judgment against James and Nicole for their failure to file any responsive pleadings. (doc. 53-1 at 3-4.)

Rule 55 sets forth the conditions under which default may be entered against a party, as well as the procedure to seek the entry of default judgment. There is a three-step process for securing a default judgment. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a party "has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). Next, an entry of default must be entered when the default is established "by affidavit or otherwise." *See id*.; *NewYork Life Ins. Co.*, 84 F.3d at 141. Third, a party may apply to the clerk

or the court for a default judgment after an entry of default. Fed. R. Civ. P. 55(b); *New York Life Ins. Co.*, 84 F.3d at 141. Here, because both James and Nicole failed to defend themselves in this suit, and Plaintiff has obtained an entry of default, the first two requisites for a default judgment have been met. (doc. 50.) Remaining for determination is whether a default judgment and an award of damages are warranted.

## A.  Default Judgment

Courts consider numerous factors in deciding whether to grant a motion for default judgment. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2685 (3d ed. 1998). The applicable factors include: (1) the amount of money involved; (2) whether there are material issues of fact or issues of substantial public importance at stake; (3) whether the default is technical in nature; (4) the extent of prejudice to the plaintiff due to the delay; (5) whether the grounds for default are clearly established; (6) the harsh effect of a default judgment; (7) whether the default resulted from a good faith mistake or excusable neglect on the defendant's part; (8) whether the plaintiff's actions contributed to delay; and (9) whether the court would be obligated to set aside the default on motion by the defendant. *Id.*; *see also Stelax Indus., Ltd. v. Donahue*, No. 3:03-CV-923-M, 2004 WL 733844, at *11 (N.D. Tex. Mar. 25, 2004).

Plaintiff seeks a declaration allowing it to enforce its lien against the Property through foreclosure, as well as a declaration that all of James's and Nicole's right, title, and interest in the Property are divested after foreclosure. (doc. 53-1 at 1-3.) It attaches certified copies of the Note, Deed of Trust, Notice of Default, and Notice of Acceleration to its motion showing that it fully complied with the procedural requisites contained in the Texas Property Code. (doc. 53-3.)

Under the first two factors, Plaintiff is not seeking monetary damages but solely a "judgment allowing foreclosure of the [Property]," and there are no material issues of fact apparent from the amended complaint, the default motion, or the attached exhibits. (doc. 53-1 at 3.) Though the default appears to be technical in nature (third factor), Plaintiff is prejudiced and harmed by the continued delay in this case, which is the fourth factor. *See U.S. v. Fincanon*, No. 7:08-CV-61-O, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009) (holding that a plaintiff's interests were prejudiced because the defendant's failure to respond brought the adversary process to a halt). Under the fifth and sixth factors, the grounds for default are clearly established, and a default judgment is not unusually harsh under these facts as both James and Nicole have received ample notice of this action and sufficient time to respond. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The seventh, eighth, and ninth factors similarly favor default judgment because neither James nor Nicole has offered any evidence that the failure to answer was the product of a good faith mistake or excuse, Plaintiff has not contributed to the delay in this case, and there does not appear to be any basis upon which the Court would be obligated to set aside the default. Plaintiff has accordingly met the procedural requirements for default judgment. *See Ramsey v. Delray Capital, LLC*, No. 3:14-CV-3910-B, 2016 WL 1701966, at *3 (N.D. Tex. Apr. 28, 2016.)

No material issues of fact have been placed in dispute due to James's and Nicole's failure to respond to the complaint. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact"). Because they were both properly served in this action and failed to answer or otherwise defend themselves, the grounds for default judgment are clearly established. (docs. 10, 47, 50.) Accordingly, the procedural prerequisites for a default judgment are satisfied.

B.    **Damages**

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The relief requested in a plaintiff's complaint limits the relief available in a default judgment. *See Sapp v. Renfroe*, 511 F.2d 172, 176 n.3 (5th Cir. 1975). "Once a defendant is in default, the court accepts as true all facts set forth in the complaint aside from those relating to damages." *Jones v. Lockhart, Morris & Montgomery, Inc.*, No. 1:11-CV-373, 2012 WL 1580759, at *3 (E.D. Tex. Feb. 3, 2012). Though damages on a default judgment are normally not awarded without a hearing or by detailed affidavits, a hearing is unnecessary if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *Future World Elecs., LLC*, 2013 WL 5925089, at *3 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)).

Neither Plaintiff's amended complaint nor its motion for default judgment seek an award of monetary damages, but only an order authorizing foreclosure of its lien on the Property consistent with the Note and Deed of Trust. (docs. 39 at 5-8, 53-1 at 3-4.) Because the requested relief does not differ in kind from, or exceed in amount, what is demanded in the pleadings, the only remaining issue is whether the relief requested is appropriate based on the governing law. *Chevron Intellectual Prop., LLC v. Allen*, No. 7:08-CV-98-O, 2009 WL 2596610, at *3 (N.D. Tex. Aug. 24, 2009).

To show entitlement to an order authorizing foreclosure on a home equity loan in Texas, a party must demonstrate that: (1) a debt exists; (2) the debt is secured by a lien created under Article 16, Section 50(a)(6) of the Texas Constitution; (3) a default occurred under the relevant loan documents; and (4) proper service of a notice of default and a notice of acceleration has been

effectuated. *See Christiana Trust v. Jacob*, No. 7:15-CV-033-DAE, 2016 WL 4468274, at *2 (W.D. Tex. Aug. 23, 2016) (citing Tex. Prop. Code § 51.002; *Huston v. U.S. Bank Nat'l Ass'n*, 988 F. Supp. 2d 732, 740 (S.D. Tex. 2013), *aff'd*, 583 F. App'x 306 (5th Cir. 2014)).

Based upon the well-pleaded allegations in the amended complaint, which are accepted as true, and the exhibits attached to its motion, Plaintiff has demonstrated all of the elements required to show its entitlement to an order authorizing foreclosure. It has shown that a debt exists under the Note, which is secured by a lien created in the Deed of Trust under Article 16, Section 50(a)(6) of the Texas Constitution. (docs. 39 at 2-5, 53-3 at 8-38.) It has also shown that a default occurred under the loan documents for the failure to make any monthly payments beginning April 1, 2015, and that notices of default and acceleration have been properly served. (docs. 39 at 2-5, 53-3 at 40-70.) It has additionally demonstrated that, pursuant to Texas Estates Code §§ 101.001(b) and 101.051(b)(1), both James and Nicole are heirs at law to the Borrowers, such that they each acquired an interest in the Borrowers' respective estates upon their death, including an undivided interest in the Property subject to Plaintiff's lien. (doc. 39 at 3-4, 6-7.) Plaintiff has shown that it is entitled to a default judgment authorizing foreclosure on James's and Nicole's interest in the Property. *See U.S. Bank Nat'l Ass'n for Residential Asset Sec. Corp., Home Equity Mortg. Asset-Backed Pass-Through Certificates, Series 2007-KS2 v. McCormick*, No. 3:17-CV-1704-L, 2018 WL 1210555, at *2-3 (N.D. Tex. Mar. 8, 2018) (granting default judgment that authorized the plaintiff to foreclose on its lien in the mortgaged property).

## IV.  EVIDENTIARY OBJECTIONS

Charles objects to Plaintiff's use of the Affidavit of Michelle McLean (McLean Affidavit) as summary judgment evidence on grounds that it generally fails to comply with the federal

Administrative Procedure Act (APA). (*See* doc. 57 at 2-3.) He also appears to object that McLean lacks personal knowledge of the facts contained in her affidavit, and that it contains inadmissible hearsay. (*Id.*)

## A.    <u>Administrative Procedure Act</u>

Charles first appears to object that Plaintiff's use of the McLean Affidavit is improper because he has the "right to face [his] accuser, and cross-examine him in order that the facts may be established" as required under 5 U.S.C. § 556(d) of the APA. (doc. 57 at 2.)

Section 556(d) of the APA provides that during administrative agency hearings ". . . [a] party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts."  This provision applies only to federal administrative hearings required by 5 U.S.C. §§ 553 or 554. *See* 5 U.S.C. § 556(a). The Federal Rules of Civil Procedure, moreover, expressly allow affidavits or declarations to be used as support for a summary judgment motion. Fed. R. Civ. P. 56(c)(4). This objection is overruled.

## B.    <u>Personal Knowledge</u>

Charles next objects that the McLean Affidavit violates Federal Rule of Evidence 602 because McLean lacks "personal knowledge" of the information contained in it. (doc. 57 at 3.)

A "declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Federal Rules of Evidence further require that a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid.

602. Personal knowledge may be proved by a witness's or an affiant's own testimony, or reasonably inferred from his position or the nature of his participation in the matters to which he swears. *See id.*; *Am. Motorist Ins. Co. v. Southcrest Constr. Inc.*, No. 3:04-CV-2575-M, 2006 WL 995202, *9 (N.D. Tex. 2006) (citing *DIRECTV v. Budden*, 420 F.3d 521, 529-30 (5th Cir. 2005)). It may include inferences and opinions so long as they are grounded in personal observation and experience. *See United States v. Cantu*, 167 F.3d 198, 204 (5th Cir. 1999).

Here, Plaintiff proffers a sworn affidavit from McLean, who identifies herself as the Contract Management Coordinator for Ocwen with the authority to make her affidavit on behalf of the company. (doc. 53-3 at 2-3.) She avers that she made her affidavit "based on [her] personal knowledge of the facts contained herein," which is "based on [her] review of the Servicing Records" and the "regular performance of [her] job functions at Ocwen" that make her familiar with the "business records maintained by Ocwen for the purpose of servicing mortgage loans, collecting payments, and pursuing any delinquencies." (*Id.* at 3.) She states that the attached loan documents, including the Note, Deed of Trust, and payoff statement, are the "originals or exact duplicates of the originals." (*Id.* at 5.) This is sufficient to establish that McLean has personal knowledge of the matters set forth in her affidavit and the attached exhibits. *See Highpoint Risk Servs. LLC v. Companion Prop. & Cas. Ins. Co.*, No. 3:14-CV-3398-L-BH, 2016 WL 4479511, at *7 (N.D. Tex. Aug. 25, 2016). Based on her position with Ocwen and her familiarity with the details of the case, McLean has the requisite personal knowledge to make the statements at issue.  *See Dalton v. FDIC*, 987 F.2d 1216, 1223 (5th Cir. 1993) (holding that a bank employee may gain personal knowledge by reviewing the organization's records). This objection is overruled.

C.    **Hearsay**

Charles also appears to assert a hearsay objection under Federal Rule of Evidence 802 against the loan documents attached to the McLean Affidavit. (doc. 57 at 3.) Plaintiff responds that these documents are admissible under the business records exception. (doc. 61 at 4-5.)

Except in limited circumstances, an out-of-court statement offered to prove the truth of the matter asserted is hearsay, and subject to certain exceptions, is not admissible as evidence. *See* Fed. R. Evid. 801-05. The proponent of hearsay bears the burden of demonstrating that an exception to the hearsay rule applies. *See Broadcast Music, Inc. v. Tex Border Mgmt., Inc.*, No. 3:10-CV-2524-BH, 2012 WL 4119111, at *4 (N.D. Tex. Sept. 18, 2012). Under Rule 803(6) of the Federal Rules of Evidence, "evidence that would otherwise be inadmissible as hearsay is admissible under the business records exception if the requirements for admitting the evidence 'are shown by the testimony of the custodian or another qualified witness.'" *Cline v. Deutsche Bank Nat. Trust Co.*, No. 3:14-CV-1565-D, 2015 WL 4041791, at *3 (N.D. Tex. July 2, 2015) (quoting Fed. R. Evid. 803(6)(D)). "Rule 803(6) allows business records to be admitted if witnesses testify that the records are integrated into a company's records and relied upon in its day to day operations . . . [e]ven if the document is originally created by another entity, its creator need not testify when the document has been incorporated into the business records of the testifying entity." *Id.* (citations omitted). Rule 803(6)(E) further provides that if the conditions for admitting a business record are met, the evidence is admissible only if "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E). Because there is a presumption in favor of admissibility and trustworthiness, the party seeking to exclude such evidence bears the burden of showing a lack of trustworthiness. *See Moss v. Ole South*

14

*Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991)

Here, McLean states in her affidavit that she is qualified to testify about Ocwen's business records due to her job position and her personal review of the loan documents. (doc. 53-3 at 5.) She further explains that:

> Attached [to her affidavit] are business records of Ocwen, including documents obtained through Ocwen's servicing agreement with Deutsche Bank, including prior servicer files, documents obtained from Ocwen's foreclosure counsel, and documents generated by Ocwen itself. These said records are kept by Ocwen in the regular course of business, and it was the regular course of practice of Ocwen for an employee or representative of Ocwen with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such records; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the originals or exact duplicates of the originals.

(*Id.*) This is sufficient to show that McLean is qualified to offer her affidavit and to meet the conditions under Fed. R. Evid. 803(6)(A)-(D) for the business records exception to apply here. *See Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir. 1980) ("Any person in a position to attest to the authenticity of certain records is competent to lay the foundation for the admissibility of the records; he need not have been the preparer of the record, nor must he personally attest to the accuracy of the information contained in the records."); *see also* Fed. R. Evid. 803(6)(D).

Charles now has the burden to show that these documents are untrustworthy in accordance with Rule 803(6)(E). *See Moss*, 933 F.2d at 1305. He does not, however, identify any reason why the McLean Affidavit or the attached documents indicate a lack of trustworthiness other than to reiterate that McLean lacks "firsthand knowledge" of the loan documents. (doc. 57 at 3.) As discussed, Plaintiff has sufficiently established that McLean has personal knowledge of the matters and business records set forth in her affidavit, such that she is capable of making these sworn statements. *See Johnson v. HomeBridge Fin. Servs.*, No. H-16-0748, 2017 WL 1403300, *4 n.23

(S.D. Tex. Apr. 18, 2017) (overruling hearsay objection to a lender's declaration used as summary judgment evidence because the declarant gained personal knowledge and based his statements on a review of the business records and loan file). Because Charles fails to identify a lack of trustworthiness with the McLean Affidavit, his hearsay objection is overruled.

**V. SUMMARY JUDGMENT**

Plaintiff next moves for summary judgment against Charles and the Unknown Heirs, to the extent that any additional heirs exist. (doc. 53-1 at 4-13.)

**A.**     <u>**Summary Judgment Standard**</u>

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 324.  To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249.

16

"The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)). While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). There is also "no genuine issue as to any material fact [if] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.[9]

## B.    Foreclosure

Plaintiff contends that it is entitled as a matter of law to an order authorizing foreclosure of its lien on the Property against Charles and the Unknown Heirs, to the extent any exist. (doc. 53-1 at 1-2, 9-13.)

As noted, a party shows entitlement to an order authorizing foreclosure on a home equity loan in Texas by demonstrating that: (1) a debt exists; (2) the debt is secured by a lien created under

---

[9] Rule 56 imposes no obligation "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

Article 16, Section 50(a)(6) of the Texas Constitution; (3) a default occurred under the relevant loan documents; and (4) proper service of a notice of default and a notice of acceleration has been effectuated. *See Christiana Trust*, 2016 WL 4468274, at *2.

Here, Plaintiff proffers the McLean Affidavit, the Note, the Deed of Trust, the assignment, the Notice of Default, the Notice of Acceleration, and the payoff calculation as summary judgment evidence to meet its burden. (*See* doc. 53-3.) This evidence shows that a debt in the amount of $76,000.00 bearing interest at the rate of 7.7500% per annum payable to Plaintiff exists under the Note (*id*. at 8-14), and that this debt is secured by a lien on the Property created in the Deed of Trust under Article 16, Section 50(a)(6) of the Texas Constitution (*id*. at 16-38). Plaintiff's summary judgment evidence also shows that there is a default under the Note and Deed of Trust because the required monthly payments beginning April 1, 2015, are owed and remain unpaid.[10] (*Id*. at 66-70.) It further shows that Plaintiff properly complied with the notice requirements contained within the Note, Deed of Trust, and Texas Property Code when it provided written notices of default on November 9, 2015, and notices of acceleration on December 15, 2015.[11] (*Id*. at 40-64); *Morgan v. Chase Home Fin., LLC*, 306 F. App'x 49, 55-56 (5th Cir. 2008) (affirming district court's finding that "no Texas authority stat[es] that 'in the event of the death of a debtor, the [mortgage servicer] should be required to conduct some level of investigation to determine the legal heirs for purposes of proper notification prior to foreclosure'"). Plaintiff has met its summary judgment burden to show

---

[10] As of August 18, 2017, the total amount due under the terms of the loan documents was $82,387.54. (doc. 53-3 at 67.)

[11] The Texas Property Code requires a mortgage servicer to serve a debtor in default with written notice by certified mail stating that the note is in default and providing at least twenty days to cure before any notice of sale can be given. *See* Tex. Prop. Code § 51.002(d). Service is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. *Id*. at § 51.002(e). Charles does not object or identify any error in the service of the Notice of Default or Notice of Acceleration. (*See* doc. 57.)

no genuine issue exists as to any material fact regarding its entitlement to an order authorizing foreclosure on the Property.

The burden now shifts to Charles and the Unknown Heirs to identify evidence in the record raising a genuine issue of material fact that Plaintiff is not entitled to a foreclosure order on the Property. Charles does not identify any summary judgment evidence, but he instead responds that "[a] witness is clearly a material fact," and that "without a witness [Plaintiff] lacks a material fact." (doc. 57 at 3.) He contends that "no valid contract" exists because Plaintiff's evidence is "[l]acking a witness" and is also "[l]acking full disclosure as to who funded the bank's check." (*Id.* at 4.) These conclusory assertions are simply a reiteration of his unsuccessful objection to Plaintiff's summary judgment evidence for a lack of "personal knowledge," and do not identify a genuine issue of material fact. Charles, moreover, does not contest Plaintiff's assertion that both of the Borrowers died intestate without any probate proceedings, o5 that he acquired an undivided interest in the Property immediately upon the Borrowers' deaths in accordance with §§ 101.001(b) and 101.051(b)(1) of the Texas Estates Code.[12] (*See* doc. 57); *Pearce v. Stokes*, 291 S.W.2d 309, 310 (Tex. 1956) ("Death of the grantor in a deed of trust does not revoke or suspend a power of sale contained therein."). Charles and the Unknown Heirs have failed to meet their summary judgment burden to show a genuine issue of material fact on at least one element of Plaintiff's claim for foreclosure.

---

[12] In his response, Charles cites to "UCC 1-308" as a way to "reserve [his] common law right not to be compelled to preform [*sic*] under any contract [he] did not enter into knowingly, voluntarily, and intentionally." (doc. 57 at 2.) This portion of the Uniform Commercial Code, however, was "intended to enable a party in a commercial transaction to accept the other side's continued performance without waiving the right to sue for breach of contract." *United States v. Gillen*, No. CV B-16-24, 2016 WL 3349163, at *1 n.1 (S.D. Tex. Apr. 29, 2016), *adopted by* 2016 WL 3349323 (S.D. Tex. June 15, 2016) (quoting *Thompson v. Houlihan*, No. 09-C-2914, 2011 WL 833604, at *4 (N.D. Ill. Mar. 4, 2011)). This provision has no relevance here, and Charles fails to argue how "UCC 1-308" applies to the Texas Estates Code.

The summary judgment evidence shows that Plaintiff is the proper party to foreclose on the Property as the holder/owner of the Note and Deed of Trust, and that it has the authority to exercise a power of sale consistent with the Texas Property Code. *Green v. JP Morgan Chase Bank, N.A.*, 562 F. App'x 238, 240 (5th Cir. 2014) (explaining that it is well-established under Texas law that the mortgage on real estate follows the promissory note it secures). Plaintiff is entitled to a judgment as a matter of law against Charles and the Unknown Heirs authorizing foreclosure on the Property to enforce its lien.[13]

## VI. RECOMMENDATION

Plaintiff's combined motion for default and summary judgment should be **GRANTED**, and Charles's "Writ of Quo Warranto" should be **DENIED**.

**SO RECOMMENDED** on this 11th day of June 2018.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[13] In its combined motion, Plaintiff requests an award of attorney's fees as authorized by the terms of the loan documents "in an amount to be determined by subsequent motion practice." (doc. 53-1 at 13.) Because this request "provides a sufficient contractual basis for awarding attorney's fees," the proper amount of attorney's fees will be considered postjudgment accordingly. *U.S. Bank Nat'l Ass'n for Residential Asset Sec. Corp., Home Equity Mortg. Asset-Backed Pass-Through Certificates, Series 2007-KS2 v. McCormick*, No. 3:17-CV-1704-L, 2018 WL 1210555, at *2-3 (N.D. Tex. Mar. 8, 2018) (allowing the issue of attorney's fees on a foreclosure action to be considered postjudgment under Rule 54(d)(2)).

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

21